IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| RICK J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-3229-CV-S-NKL |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Rick Brown's ("Brown") Motion for Summary Judgment [Doc. # 8]. Brown seeks judicial review of the Commissioner's denial of his request for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* The Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Following a review of the entire record, the Court affirms the ALJ's decision.

**I. Background**

Brown filed his application for benefits on July 30, 2003, wherein he alleged an

---

[1] Upon review of the record and the law, the Defendant's position is found to be persuasive. Much of the Defendant's brief is adopted without quotation designated.

1

onset date of May 9, 2003. Brown was forty-eight years old on his alleged onset date and he alleged that he was unable to work due to lower back pain and "minor" depression. (Tr. 62.) Brown's past work was primarily as a sewer cleaner and crew leader for a city public works department.

### A. Brown's Medical Overview

On March 8, 2002--approximately one year before his alleged onset date--Brown injured his lower back while working. Brown underwent a series of physical therapy sessions from late March through early April 2002 with Phillip Goble. At his final visit, Mr. Goble assessed that Brown had 90% range of motion in flexion in standing, an 80% range of motion in left side bending, a 60% range of motion in right side bending accompanied by right iliac crest pain, and an 80% range of motion in extension. (Tr. 105) Mr. Goble noted that the plan was for Brown to continue his physical therapy but the records do not reflect any additional therapy consultations. Mr. Goble noted that Brown had not achieved his short-term goal of reporting a 3/10 pain at rest, but he had accomplished his other short-term goals. Brown had not achieved any of his long-term goals.

Brown was treated for his work injury by Ted A. Lennard, M.D. Dr. Lennard diagnosed lower back pain and degenerative changes in the spine. (Tr. 119.) On December 6, 2002, Dr. Lennard drafted a final report and provided Brown a rating for his workers' compensation claim. (Tr. 119.) Dr. Lennard opined that Brown had an 8% permanent partial impairment of the whole body and he had no signs of lumbar

radiculopathy. Dr. Lennard encouraged Brown to exercise and limited him to lifting 40 pounds and using heavy equipment for only four hours per shift. Dr. Lennard did not indicate the need for any additional medical treatment. Brown maintained his employment doing light work but he eventually discontinued his employment.

On May 14, 2003, Brown treated with David G. Paff, M.D., at the request of his attorney. (Tr. 138-40.) Dr. Paff is a specialist in occupational medicine and he noted that Brown had received disability retirement pay from his previous employer the week prior to their appointment. Brown lifted 40 pounds occasionally, walked normally and had normal sensation in his lower extremities. For purposes of workers' compensation, Dr. Paff opined that Brown had a 10% permanent partial disability that would not require future surgery and could be treated with "a non-steroidal anti-inflammatory or Ultram." (Tr. 140.)

On May 20, 2003, at the request of his employer, Brown consulted with Robert Bennett, M.D., as part of his workers' compensation claim. (Tr. 142-43.) Dr. Bennett opined that Brown could not perform his past duties as a sewer cleaner and work leader. He also stated that Brown had been honest and consistent throughout the evaluation period.

On April 5, 2004, Brown had a follow-up consultation with Dr. Paff. (Tr. 165.) Brown had not had any surgery or treatment in the intervening time period. Brown reported that he had fallen down four times, but he did not report any increased pain from the previous year. Dr. Paff did not provide any prescription medications related to

3

Case 6:05-cv-03229-NKL   Document 10   Filed 11/23/05   Page 3 of 9

Brown's back problems.

At the request of Brown's counsel, Dr. Paff provided a functional capacity opinion. (Tr. 166-69.) He opined that Brown could lift 20 pounds occasionally and 10 pounds frequently. Brown could stand for a total of 3 hours per workday, continuously for 20 minutes, and he could sit for 6 hours per workday, continuously for 2 hours. Brown could push or pull up to 10 pounds and he had unlimited restrictions in several other physical factors. Brown could only occasionally perform climbing, balancing, stooping, kneeling, crouching, and crawling. Dr. Paff opined that Brown would not need unscheduled breaks and he would not need to miss work as a result of his impairment or treatment.

### B. The Hearing

#### 1. *Brown's Testimony*

At the hearing in November 2004, Brown testified that he was using ibuprofen and Alleve to control his pain. (Tr. 180.) He indicated the last time he saw a doctor for his pain was in April 2004 for his follow-up visit to Dr. Paff. Brown testified he could sit for up to 35 minutes and stand up for 20 minutes. He stated he could sit for a total of 4 hours in a regular workday with breaks at 30 minute intervals. Brown testified he could walk a few blocks and he had driven himself to the hearing. He also stated that there were some days when he could not get out of bed.

#### 2. *Vocational Expert's Testimony*

In response to a hypothetical question from the ALJ, the vocational expert testified

4

that, although he could not perform his past work, Brown could perform unskilled light work, such as a cashier or small parts assembler. (Tr. 199.)

## II. Discussion

### A. Brown's Credibility

There is no dispute among the parties regarding whether Brown could perform his past work because it was clear that he could not. However, there is evidence to support the ALJ's conclusion that Brown's limitations appeared to be more of a personal choice rather than one imposed by his impairments. There is no evidence that Brown sought or was motivated to obtain work that was within the limited imposed by his doctors. Brown appears to acknowledge this in one document in which he stated that he was put on "light duty" following his injury and left work in May 2003 "when my employer could no longer let me work light duty." (Tr. 72.) Thus, it appears that Brown left work, not because he was unable to perform the lighter duty, but because his employer could not, or would not, accommodate that need. This was a proper factor for the ALJ to consider. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("[T]he ALJ may consider . . . the fact that a claimant left work for reasons other than a medical condition.").

Brown also argues that the ALJ improperly characterized the findings of Dr. Paff as being within the range of "light" work when they were not. However, the ALJ accurately stated that Dr. Paff had treated Brown on only two or three occasions. Because of this limited relationship, it is questionable whether Dr. Paff can be considered a treating source within the meaning of the regulations. *See Randolph v. Barnhart*, 386

5

F.3d 835, 840 (8th Cir. 2004) (finding that doctor's opinion not entitled to treating source weight where only consulted with claimant three times).

Nonetheless, even assuming Dr. Paff is properly considered a treating source, the doctor did describe Brown as capable of work within the light range. Dr. Paff opined that Brown could lift up to 20 pounds occasionally and 10 pounds frequently with other limitations. A limitation of lifting 20 pounds occasionally puts Brown within the "light" range of exertional work using the categories defined in the regulations. *See* 20 C.F.R. 404.1567. As discussed further in the next section, an erosion of some portion of the "light" occupational category does not preclude consideration within this category. More specifically, the fact that Dr. Paff stated that Brown had limitations in the ability to stand does not alter the fact that Brown could perform work within the light exertional category. Instead, it only indicates that there would be some erosion in the occupational basis of light work.

Brown next argues that the ALJ inaccurately stated there was no indication that he was "bedfast" because he argues he never averred that he was bedridden. The ALJ's statement, however, is correct. Brown is not bedfast, although Brown did testify at the hearing that there were days when he could not get out of bed. (Tr. 192.) Brown has failed to show that this statement undermines the ALJ's conclusion that he is not disabled.

The ALJ properly noted Brown's lack of strong pain medicine and his reliance on over-the-counter remedies. The lack of strong prescription pain medication supports the ALJ's findings. *See Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999). Moreover, over-

6

the-counter medication is inconsistent with complaints of disabling pain. *See Loving v. Dep't of Health & Human Services*, 16 F.3d 967, 971 (8th Cir. 1994).

Additionally, the ALJ also noted the absence of any doctor opining that Brown was disabled and incapacitated from working. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (citation omitted) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability).

Finally, the ALJ relied on the fact that Brown's treatment was minimal and conservative. After his care with Dr. Lennard ended in 2002, Brown's only medical examinations appear to have been two examinations with Dr. Paff, one year apart, and one examination by Dr. Bennett for workers' compensation purposes in May 2003. Also, Brown's impairments never required surgery or invasive treatments. A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received limited medical treatment. *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000).

Based on all of the foregoing factors, the ALJ's evaluation of Brown's credibility is supported by substantial evidence in the record.

### B. Brown's Ability to Perform Other Work

Because Brown had non-exertional limitations, the ALJ was precluded from using the guidelines to direct a finding that an individual is not disabled. Instead, the ALJ used the guidelines as a guide or a framework to determine disability that is supplemented by vocational expert testimony or other evidence in the record which meets the

7

Commissioner's burden of showing that work exists in the national economy that the claimant is capable of performing.

The crux of Brown's argument is that the ALJ should have used the "sedentary" rule (i.e., lifting 10 pounds maximum occasionally) rather than the "light" rule (lifting 20 pounds maximum occasionally) because of his limited ability to stand during the workday. First, no doctor has imposed the strength and lifting impairments required by the sedentary ruling nor does it appear that Brown is arguing that his lifting capacity is limited to 10 pounds maximum occasionally. Instead, Brown assumes that because he could not perform the full requirements of light work (i.e., the ability to stand more than a few hours during the workday), then the ALJ must instead drop to the next exertional category, which is the sedentary range.

However, this is incorrect. The regulations clearly state that the guidelines are to be used based on strength limitations alone. Indeed, prior to relying on vocational expert testimony, the ALJ must determine if an individual would be disabled based on the strength limitations alone. As noted above, it is undisputed that Brown can satisfy the strength limitations of a "light" work assessment; thus, he was not entitled to a *per se* finding of disability.

Here, the ALJ looked to the guidelines for an individual who could perform the strength requirements of "light" work initially, and because Brown could not perform the full range of "light" work because of his limitations on standing, the ALJ called a vocational expert to testify. The expert testified that for an individual such as Brown, the

occupational basis of unskilled work would only be minimally eroded. Thus, Brown could perform the jobs of cashier or small parts assembler and he was not considered eligible for disability benefits.

Based on the foregoing, the ALJ's decision is supported by substantial evidence in the record and her decision will be affirmed.

**III. Conclusion**

Accordingly, it is hereby

ORDERED that Brown's Motion for Summary Judgment [Doc. # 8] is DENIED. The decision of the Commissioner is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

DATE: November 23, 2005
Jefferson City, Missouri